# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LOCAL ACCESS, LLC, | ) | CASE NO. 1:23-mc-1 |
| | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| PEERLESS NETWORK, INC., | ) | |
| | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

In an order dated May 2, 2023, following a show cause hearing on a motion of Peerless Network, Inc. ("Peerless"), this Court found Reid Hickman ("Hickman") and his company Universal Dictation, LLC ("UD") in contempt for failure to comply with valid subpoenas issued by Peerless in an underlying action in Florida,[1] as well as for failure to comply with this Court's order of January 26, 2023, that had granted Peerless' motion to compel. (Doc. No. 15, Order of Contempt.)[2] The Court further ordered that Hickman and UD were fined $500 a day, payable to the Court, until such time as they comply with Peerless' subpoenas to produce documents and appear for a deposition;[3] that Hickman and UD were to pay Peerless' reasonable attorney's fees

---

[1] The subpoenas were issued in connection with *Local Access, LLC v. Peerless Network, Inc.*, Case No. 6:17-cv-00236-WWB-EJK (M.D. Fla. filed Feb. 9, 2017). In documents previously filed with this Court, Hickman was identified as a possible witness because UD had entered into a contract with Local Access, LLC that was relevant and material to the claims in the underlying litigation. (*See* Doc. No. 1, Motion to Compel Compliance with Third-Party Deposition Subpoenas.)

[2] Although having been served with copies of the order setting the show cause hearing (*see* Doc. No. 13), neither Hickman nor UD appeared.

[3] The order of contempt also indicated that, should there be no compliance within fourteen days, the Court would consider additional sanctions, including issuing a writ of bodily attachment for Hickman.

and costs incurred in connection with litigating this miscellaneous action;[4] and that Peerless was to file a statement of attorney's fees and costs for the Court's consideration. (*Id*. at 1–2[5] ¶¶ 2–4.)

Following the order of contempt, other than a letter to the Court from Hickman and a response to that letter from Peerless (*see* Doc. No. 17, Letter; Doc. No. 18, Response), there was no further action, no immediate follow-up reporting, and no additional request for Court assistance. It now appears that Hickman did finally appear for his deposition by videoconference on May 31, 2023. (*See* Doc. No. 27-1 [sealed], Partial Transcript.)

Peerless timely filed its statement of fees and costs on May 16, 2023, seeking a total of $61,814.98 in attorney's fees (for the services of two law firms) and $817.98 in costs. (*See* Doc. No. 19, Statement of Attorney's Fees and Costs ("the statement").) The certificate of service on the statement, signed by Peerless' attorney Gregory T. Frohman, certified service by regular mail "on the parties to this Miscellaneous Action [*i.e.*, Local Access, LLC and Peerless]" and "via electronic mail upon the counsel for Plaintiff [*i.e.*, Local Access, LLC] in the Underlying Litigation[.]" (*Id*. at 3.)

There was no indication that either Hickman or UD had been served with a copy of the statement, as neither of them is a party to either this miscellaneous action or to the underlying action in Florida. Therefore, on June 6, 2023, the Court ordered Peerless to provide proof of service on Hickman and UD. (*See* Doc. No. 20, Order.) In that same order, the Court noted that any

---

[4] *See* Fed. R. Civ. P. 37(a)(5)(A) (providing that, subject to certain exceptions not present here, if a motion to compel discovery is granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" (emphasis added)).

[5] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

opposition to the statement would be due within 21 calendar days of whenever the statement was served. (*Id*. at 2.)[6]

Peerless subsequently supplied proof of service, indicating that the statement had originally been served on both Hickman and UD "by regular U.S. mail . . . on May 16, 2023." (*See* Doc. No. 21, Notice, at 1 (footnote omitted).) Peerless further noted that service copies "were not returned undeliverable." (*Id*.) As directed by the Court's June 6, 2023 order, Peerless also indicated in its notice that it would serve both a copy of the June 6th order and another copy of the statement by certified mail, commercial carrier (FedEx overnight), and electronic mail, and would subsequently file proof of such service on the record. (*Id*.) Peerless did file such proof of service on both Hickman and UD. (*See* Doc. No. 22, Notice of Service.) Finally, Peerless also confirmed that Hickman had appeared for a deposition on May 31, 2023. (Doc. No. 21, at 1.)

According to the service information provided by Peerless and outlined above, and given the June 6, 2023 order setting a deadline of 21 days following service to oppose the statement, Hickman and UD would have had until June 9, 2023 to file any opposition.[7] To date, no such opposition has been filed nor has any extension of the deadline been timely sought or granted.[8]

---

[6] Allowing 21 days for any opposition was generous, given that Local Rule 7.1(d) requires an opposition brief within 14 days after service of a non-dispositive matter, such as the statement. The extended period was set in recognition of the *pro se* status of Hickman.

[7] The 21-day deadline fell on June 6, 2023. When computing time for a service period stated in days (as here), the day of the triggering event is excluded (*i.e.*, May 16, 2023) and every day, including Saturdays, Sundays, and legal holidays, is counted (*i.e.*, May 17–June 6, 2023). Fed. R. Civ. P. 6(a). An additional 3 days for mail service is permitted (*i.e.*, June 6–9, 2023). Fed. R. Civ. P. 6(d).

[8] This is not surprising as the tenor of Hickman's email responses to the latest electronic service of the statement of fees and costs suggests he does not intend to respond or, for that matter, to pay any amount ordered. (*See* Doc. No. 22-1, at 2.)

That said, on July 5, 2023, the Court received a letter from Hickman dated June 15, 2023. (Doc. No. 23.)[9] In his letter, Hickman acknowledges receipt of the subpoena commanding him to appear for a deposition on January 3, 2023. In fact, he attaches a copy of the subpoena to his letter. The subpoena identifies the "place" for the deposition as "Remotely via Zoom or a mutually agreed upon place[.]" (Doc. No. 23-1.) Hickman claims he "took the entire day off . . . was there and ready on January 3rd, but no one ever showed up to take my deposition." (Doc. No. 23, at 1.)

Because this was not the first time Hickman had claimed to have been available on January 3, 2023 for his deposition (*see* Doc. No. 17, Letter from Hickman (4/26/2023), at 1 ("I took an entire day off work on January 3rd as ordered by a Florida court and they never showed up. I was ready and waiting from 9AM to 6PM for them.")), this Court directed Peerless to respond to the June 15, 2023 letter. (*See* Doc. No. 24.) Peerless has done so. (*See* Doc. No. 27 [sealed], Doc. No. 28 [redacted].)

In its response, Peerless quotes from Hickman's May 31st deposition[10] where he testified that he "took the day off [] and waited the entire day" and "[n]o one showed up *at [his] home*." (Doc. No. 27, at 2 (quoting Hickman Dep., Doc. No. 27-1, at 6 [14:2–7] (emphasis added)).) But, when the Wayne County Sheriff's Office had previously personally served Hickman with the subpoena for the January 3, 2023 deposition, it also served a letter from Peerless' counsel (dated

---

[9] The letter was filed by the clerk in redacted form because it contained personal identifying information. An unredacted version is attached to a non-public staff note on the docket, for record purposes.

[10] Hickman's June 15, 2023 letter claims he was promised a transcript of this deposition, but has never received one. Peerless' response makes clear that the court reporter sent a copy of the transcript to Hickman on July 7, 2023, which was delayed due to the reporter's oversight. (Doc. No. 27, at 3 & n.2.) Peerless also complains that Hickman "mischaracterizes the progress and adjournment of the deposition." (*Id.*) The Court acknowledges Peerless complaint, but finds it not relevant to the ruling herein.

December 14, 2022) containing directions for accessing the deposition by Zoom. (*See* Doc. No. 18-1, Letter, at 7.)

When questioned at his deposition about his encounter with the Sheriff's Office, Hickman remembered "speaking to a deputy[,]" but could not remember the exact date(s). (Doc. No. 27-1 at 7 [22:5–15].) When asked whether he read the two subpoenas he was served, he testified that he "glanced" at them, but did not keep copies. (*Id*. at 8–9 [26:2–27:1].)[11] On May 3, 2023, one day after receiving this Court's contempt order, Hickman received an email from Robert Russell of Local Access advising Hickman to contact Christopher Esbrook at Esbrook PC. (Doc. No. 27-2, at 2; *see also* Doc. No. 27-1, at 14 [40:7–21].) Minutes later Hickman emailed Esbrook PC to schedule his deposition. (Doc. No. 27-3, at 9.) Hickman also recalled having a "heated" discussion with Mr. Russell after receiving his email, but Hickman could not recall what they had discussed. (Doc. No. 27-1, at 14 [40:10–14] & 19–20 [45:16–46:11].)

Under Fed. R. Civ. P. 45(g), a court may "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." This Court has done so (*see* Doc. No. 15) and, having considered the subsequently-supplied information from Hickman set forth herein, the Court sees no reason to reconsider that order.

Hickman, *until* he was found to be in contempt, failed to take seriously Peerless' legitimate attempt to depose him. As explained herein, he never did more than "glance" at the subpoenas and failed to comply with directions for accessing his first deposition by Zoom; instead, he simply admittedly sat *at his home* and waited for everybody else to appear there. This behavior was unacceptable. The average person can understand the significance and force of a subpoena and can

---

[11] This testimony is belied by the fact that Hickman provided a copy of his January 3, 2023 subpoena with his recent letter to the court. (*See* Doc. No. 23-1.)

be expected to respond appropriately especially where, as here, the deposition was to be conducted by Zoom and did not entail much hardship or expense to Hickman. *See* Fed. R. Civ. P. 45(d)(1) (requiring that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

A district court has "broad discretion to fashion an appropriate remedy" as a sanction for a person's contempt. *Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 396 (6th Cir. 2012) (citation omitted). As noted above, this Court previously ordered that Hickman and UD must pay the reasonable attorney's fees incurred by Peerless in this action. Ordinarily, to determine the reasonableness of requested fees, courts use the "lodestar method," that is, "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). But "[w]here the documentation of hours [or rates] is inadequate, the district court may reduce the award accordingly," including by "simply reduc[ing] the award" as an alternative to "attempt[ing] to identify specific hours that should be eliminated." *Id*. at 433, 436–37.

Peerless seeks fees for having to enforce a discovery subpoena. Since the fees sought seem significantly out of proportion to this somewhat straightforward task, and although neither Hickman nor UD filed any opposition, the Court still must examine the supporting documentation in light of the record to determine whether the request for fees is reasonable under the circumstances. This review has revealed the following.

Records submitted by the local law firm, Benesch, Friedlander, Coplan & Aronoff ("the Benesch firm"), show work performed by two attorneys: John W. Breig (designated "JWB"), billing at $385/hour; and Gregory Frohman (designated "GF"), billing at $480/hour. (*See* Doc. No. 19-1, at 7.) Records submitted by Esbrook P.C. ("the Esbrook firm"), one of the law firms

representing Peerless in the underlying litigation, show work performed by five attorneys: Shiva Gaskari, Matthew Griffin, and América Guzmán, all billing at $495/hour; and Daniel Schaefer and Stephen Brown, both billing at $635/hour. (*See id.* at 26–29.)

There is no supporting documentation regarding the credentials and/or experience of any of these attorneys from which the Court might ascertain the reasonableness of the rates charged and/or the hours spent on individual services. *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (noting that the lodestar computation requires assessment of the "prevailing market rate in the relevant community[,]" which is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record" (citations omitted)). The Court has taken this lack of documentation into account in its determination of a "reasonable" fee award.

There were only three substantive motions filed in this case and none of them was particularly lengthy or complicated—which is not surprising since, as already noted, this miscellaneous matter involved a fairly straightforward task somewhat frequently performed by attorneys.

The initial motion to compel filed on January 12, 2023, was in substance only about ten pages long. (*See* Doc. No. 1.) Yet counsel for the Benesch firm alone spent over eight hours drafting the motion, perhaps because they did not handle the case from inception and had to familiarize themselves with all that had transpired. (*See* Doc. No. 19-1, at 5 (entries dated 1/9/23 [JWB], 1/10/23 [JWB] (2 entries), and 1/12/23 [JWB] (partial entry)).) An accompanying motion for leave to seal (*see* Doc. No. 2, Motion for Leave to File Sealed Document) was only four pages long with two paragraphs of argument, but Benesch counsel spent over five hours drafting it. (*See*

*id.* at 5 (entries dated 1/10/23 [JWB], 1/11/23 [JWB], and 1/12/23 [JWB] (partial entry)).[12]) This does not even take into consideration another almost forty hours of supporting work performed by attorneys at the Esbrook firm. (*See id.* at 26–27 (entries dated 1/3/2023 through 1/12/2023).)

 On March 10, 2023, Peerless filed another motion for leave to file under seal (*see* Doc. No. 8, Motion for Leave) addressing the sealing of its ultimate motion for an order to show cause why Hickman and UD should not be held in contempt. This motion to seal was virtually identical to the earlier motion to seal. Yet two Benesch attorneys spent close to five hours on the motion. (*See* Doc. No. 19-1, at 14 (entries dated 3/9/23 [GF] (partial entry), 3/9/23 [JWB], and 3/10/23 [JWB]).)

Then, having been granted leave to file under seal, on April 6, 2023, a motion for an order to show cause was filed both under seal and in redacted form. (*See* Doc. No. 10, Motion (redacted) for Order to Show Cause; Doc. No. 11, Motion (sealed) for Order to Show Cause.) Benesch counsel spent about thirteen hours preparing this motion, perhaps partially explained by the need for two filing formats. (*See* Doc. No. 19-1, at 10, 13–14 & 18 (entries dated 2/13/23 [JWB], 3/1/23 [JWB], 3/3/23 [JWB], 3/6/23 [GF], 3/6/23 [JWB], 3/7/23 [JWB] (2 entries), 3/9/23 [GF] (partial entry), 3/9/23 [JWB] (2 entries), 4/5/23 [JWB], 4/6/23 [GF], and 4/6/23 [JWB]).)

With respect to these motions, the Court finds unreasonable at least a portion of the number of hours billed for performing the relatively straightforward task of enforcing a subpoena. The Court will take this into consideration when setting the final award of fees.

---

[12] Somewhat surprising is another entry dated 1/12/23 indicating that *counsel* (as opposed to clerical staff) prepared the filing and service copies of these first two motions, dedicating 1.80 hours to the task (which included traveling to the courthouse to file). (Doc. No. 19-1, at 6 (entry dated 1/12/23 [JWB]).) Since counsel was billing at a rate of $385/hour, this seems not the best use of time and resources and is, therefore, deemed unreasonable.

The records also show significant hours billed for attending the in-person show cause hearing on May 1, 2023, plus hours for drafting the proposed order requested by the Court following that hearing. (*See id*. at 23 (entries dated 5/1/23 [JWB] and [GF]).) These hours appear reasonable.

The Court is also mindful that some of the hours spent in this case may have been necessitated by the efforts to serve various documents and orders on Hickman and UD. It appears that Hickman may have, at least initially, gone out of his way to avoid such service, which complicated matters somewhat and likely added some billable hours.

Although Peerless chose to employ local counsel to effectively pursue this miscellaneous matter in the appropriate jurisdiction, *see The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 704 (6th Cir. 2016) (noting that "[m]ultiple-lawyer litigation is common and not inherently unreasonable"), the Court perceives little reason why the Esbrook firm was called upon to do so much research and drafting (if any at all) with respect to the various motions. Local counsel was more than qualified to handle those services, requiring little more than minimal review and, possibly, final approval of filings by Florida counsel. Instead, the Esbrook firm's bill approaches the equivalent of the Benesch firm's bill. Many of the Esbrook firm's billing entries reflect research on Ohio law and the local practices of this Court, which would have already been familiar to local counsel without need for such research. *See Hensley*, 461 U.S. at 434 (noting that "[c]ases may be overstaffed . . . [and that counsel has a duty to] exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). Where, as here, hours are deemed excessive or duplicative, a court may make "a simple across-the-board reduction by a certain percentage." *Harkless v. Husted*, No. 1:06-cv-2284, 2011 WL 2149179, at *10 (N.D. Ohio Mar. 31, 2011) (citation

omitted), *report and recommendation adopted by Harkless v. Brunner*, 2011 WL 2149138 (N.D. Ohio May 31, 2011).

Finally, the Court finds it necessary to clarify one additional point with respect to the "reasonableness" of an attorney fee award in this case. Proceedings in this case were incremental, with Hickman and UD being given every opportunity to present their position to the Court. At every step, they failed to do so, suggesting that Peerless' request for fees and costs is warranted. But Hickman is a non-party to the underlying litigation and he was proceeding in a *pro se* capacity with respect to the instant case. There is no reason to conclude that Hickman, a non-attorney, had a *clear and full* understanding of what was required of him nor that he appreciated that his failures to act might result in the *large* award of attorney's fees being sought herein. These facts require leniency on the part of the Court when it comes to awarding attorney's fees against a *pro se* individual. *See, e.g.*, *Hughes v. Rowe*, 449 U.S. 5, 15, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (recognizing that "[f]aithful adherence to the principles of *Haines v. Kerner*[, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652] dictates that attorney's fees should rarely be awarded against [*pro se*] plaintiffs[]").

In light of the above, the Court finds that some award is warranted, but the amount requested here is excessive, as well as lacking in sufficient documentation. Therefore, the request is not entirely "reasonable." As outlined in detail above, the motions and filings in this case were relatively short and uncomplicated. Yet, the time records submitted reflect a significant amount of attorney time spent on each motion (by two law firms), much of which was repetitious and/or unnecessary; in addition, there is no support provided to justify the hourly rates charged by any of the attorneys.

Accordingly, the Court will award Peerless all of its costs ($817.98). But in the exercise of its discretion, the Court will allow only two-thirds of the local Benesch firm's fees ($34,180.00 x 2/3 = $22,786.68), and none of the non-local Esbrook firm's fees—concluding the former is excessive and the latter unnecessary. The overall total award of  $23,604.66 in fees and costs is reasonable and nonduplicative in this Court's view. A separate judgment entry for that amount will issue.

**IT IS SO ORDERED**.

Dated: August 4, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**

11